UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

2003 OCT 10 P 5:13

DISTRICT C...
NEW HAVEN, C...

| | | |
|---|---|---|
| Integrated Control Systems, Inc., Robert A. Jacobson, | ) ) ) | Civil Action No. 300 CV 1295 |
| Petitioners, | ) ) ) | |
| vs. | ) ) | **AFFIDAVIT OF**<br>**KYMRIC Y. MAHNKE** |
| Ellcon-National, Inc., | ) ) ) | |
| Respondent. | ) ) | |

PERSONALLY APPEARED BEFORE ME, the undersigned, who first being duly sworn, deposes and says as follows:

1. I am an attorney for Ellcon-National, Inc. involved in pursuing execution of a $1,067,429 judgment entered September 26, 2000, plus accumulated interest, against IMPAC.

2. This Affidavit is made in response to that of Francis L. Bailey, Jr., dated September 4, 2003, and later filed with this Court.

3. I attended the meeting at Ellcon-National, Inc. referenced by Mr. Bailey. The audience had been granted to Mr. Bailey because he stated he wanted to settle the case on behalf of IMPAC.

4. When he arrived, the only negotiation he presented was that both Integrated Control Systems, Inc., a Connecticut corporation ("Integrated Connecticut"), and Integrated Control Systems, Inc., a Florida corporation ("Integrated Florida"), had no assets to pursue and that Ellcon was wasting its time.

5.  When we informed him that Integrated Florida had substantial assets, he denied this, but then said he would "look into it."

6.  IMPAC has already stated in its Response To Ellcon's Request For Admissions that all information heretofore produced is everything IMPAC has, and all other records have been either "lost or destroyed." A copy of IMPAC's Response To Ellcon's Requests For Admissions is attached to this Affidavit as Exhibit A.

7.  Now Mr. Bailey sends "computer invoices," which he purports explains the huge transfers of cash out of Integrated Connecticut after Ellcon brought its claims.

8.  Unfortunately, Mr. Bailey's database does little to explain the massive transfers of cash from Integrated Connecticut and, more importantly, continues to ignore the Court's discovery Order in this case.

9.  For example, Mr. Bailey, in his Affidavit, represents such database contains all checks written during the relevant period from Integrated Connecticut to Integrated Florida, and all invoices from Integrated Florida to Integrated Connecticut that supposedly support such payments. In addition to completely ignoring unexplained transfers to other IMPAC entities such as IMPAC Integrated Systems, Inc., Mr. Bailey's database contains only a fraction of the checks written from Integrated Connecticut to Integrated Florida.

10. For example, numerous checks previously provided to Ellcon showing payment out of Integrated Connecticut to Integrated Florida for "Worldwide Corporate Services"—a vague and ultimately meaningless notation—are strangely missing from Mr. Bailey's supposedly complete database. Those checks show transfers from Integrated Connecticut to Integrated Florida in excess of $750,000 during the relevant

period, and were originally included in Ellcon's Supplement To Motion For Sanctions. Copies of these checks not included in Mr. Bailey's "database" are attached to this Affidavit as Exhibit B.

11.   Mr. Bailey's "database" reveals additional checks, however, paid from Integrated Connecticut to Integrated Florida for "Worldwide Corporate Services" that are in addition to those shown in Exhibit B. These additional checks and attached invoices with this cryptic notation provided by Mr. Bailey total an additional $243,100 and are attached to this Affidavit as Exhibit C.

12.   Accordingly, there are clearly transfers from Integrated Connecticut to Integrated Florida of almost $1 million whereby Integrated Connecticut continues to defy this Court's Order that it provide a detailed explanation for the transfers. Simply providing invoices with the words "Worldwide Corporate Services" does not explain these transfers.

13.   Mr. Bailey's "database" also fails to explain why Integrated Connecticut has paid hundreds of thousands of dollars to third parties for the benefit of Integrated Florida.

14.   Integrated Florida owns or leases an airplane hangar at 28000 Airport Road in Punta Gorda, Florida, which houses at least one airplane owned by James B. Irwin, the owner of IMPAC. A copy of the tax records for Punta Gorda, Florida, showing the connection of this huge hangar to Integrated Florida is attached to this Affidavit as Exhibit D. But examination of the Integrated Connecticut checks shows that it was Integrated Connecticut that paid for necessities relating to the upkeep of this hangar. No checks or other payment records have been produced showing that Integrated

Connecticut ever paid rent or was otherwise connected with activities at the hangar. These payments by Integrated Connecticut on behalf of Integrated Florida include:

    a. Checks paying for pest control bills (see the attached Exhibit E)

    b. Checks paying for landscaping bills (see the attached Exhibit F)

    c. Checks paying for utility bills (see the attached Exhibit G)

    d. Checks paying for bills for roof repairs at the hangar (see the attached Exhibit H)

    e. Checks paying for bills for carpet at the hangar (see the attached Exhibit I)

    f. Checks paying for bills for miscellaneous items at the hangar, including for signs, roof repair, sealing the parking lot, cabinet tops, dumpster services, etc. (see the attached Exhibit J)

    g. Check paying for bill for security services at the hangar (see the attached Exhibit K)

None of these payments are recorded or otherwise addressed in Mr. Bailey's "database."

    15. Integrated Connecticut paid numerous other general bills of Integrated Florida during the relevant period. These payments by Integrated Connecticut on behalf of Integrated Florida include:

    a. Checks paying for bills for quick printing (see the attached Exhibit L)

    b. Checks paying for bills for land and cellular phone services (see the attached Exhibit M)

    c. Checks paying for bills for coffee and beverage services (see the attached Exhibit N)

    d. Checks paying for bills from local employment agencies (see the attached Exhibit O)

    e. Checks paying for bills from advertising in the local paper (see the attached Exhibit P)

    f. Checks paying for bills for copier leases (see the attached Exhibit Q)

g. Checks paying for bills for janitorial services (see the attached Exhibit R)

h. Checks paying for stamps from the U.S. Postmaster in Punta Gorda, Florida (see the attached Exhibit S)

None of these payments are recorded or otherwise addressed in Mr. Bailey's "database."

16.     There are also a number of checks in Mr. Bailey's "database" from Integrated Connecticut to Integrated Florida totaling $137,850.31 for which Mr. Bailey provides no invoice or explanation for the transfers. Copies of these checks are attached to this Affidavit as Exhibit T.

17.     Beginning shortly after May 1, 1998, Integrated Connecticut also transferred to a company called IMPAC Integrated Systems, Inc. (an IMPAC company with an address in Newport Beach, California—see addresses on checks) over $816,000 with absolutely no explanation for the transfers. These checks are attached to this Affidavit as Exhibit U. Some of the checks have #1707 on them, and some reference an invoice number. But, of course, all underlying documentation has been either "lost" or "destroyed" by IMPAC. IMPAC continues to ignore this Court's Order that explanation be provided for these large transfers of money out of Integrated Connecticut. None of these transfers are addressed in Mr. Bailey's "database."

18.     Checks previously provided to Ellcon show that beginning shortly after May 1, 1998, Integrated Connecticut transferred to Integrated Florida over $1,875,000 by means of checks which state they were for payment of "royalties." These checks are attached to this Affidavit as Exhibit V. As stated in Ellcon's Memorandum In Support Of Its Motion For Sanctions, it appears these royalty payments were a complete sham. Under Section 3(c) of the "Royalty Agreement" (attached hereto as Exhibit W),

Integrated Connecticut was to provide with each payment a statement of sales accompanying the payment.[1] To the best of Ellcon's knowledge, no such statements of sales ever existed. In any case, IMPAC has admitted that if they ever did exist, they too have been either "lost" or "destroyed." IMPAC continues to refuse to provide support for these massive transfers of cash which they attribute to a "royalty" obligation, thereby continuing to flaunt this Court's Order that detailed explanation be produced.

19.     Now Mr. Bailey's "database" shows <u>additional</u> monies were transferred from Integrated Connecticut to Integrated Florida under this sham royalty agreement. Mr. Bailey provides invoices from Integrated Florida matched to **different** Integrated Connecticut checks, which purportedly show the "sales" to a customer, and then the amount "billed" Integrated Connecticut for 8 percent of that amount. The problem is that Integrated Connecticut was, under the royalty agreement, to send a sales report along with payment in the amount of 8 percent of the sales reported. These invoices show the sales amount being reported by Integrated Florida instead of Integrated Connecticut, completely backward from the requirements of Section 3(c) of the purported Royalty Agreement. Apparently, these two companies were acting as one. A copy of these checks and invoices showing <u>additional</u> "royalty" payments in excess of $900,000, and customer sales reported by Integrated Florida instead of Integrated Connecticut, are attached to this Affidavit as Exhibit X.

---

[1] Sections 3(b) and 3(c) of the Royalty Agreement are inconsistent with one another. Section 3(c) states that Integrated Connecticut was to accompany each royalty payment by a true and accurate account of <u>its</u> gross sales receipts. But Section 3(b) says Integrated Florida is to invoice Integrated Connecticut based on the sales receipts. This begs the question as to which entity reported sales receipts to the other. The obvious answer is that only <u>one</u> company—IMPAC—was presented to the public (consisting of all of Mr. Irwin's IMPAC companies), and this Royalty Agreement is a sham.

20. From all of the above, it is readily apparent that Integrated Connecticut and Integrated Florida never operated at arms length.

21. In addition, the huge amounts of cash transferred from Integrated Connecticut to IMPAC Integrated Systems, Inc. (see Exhibit U) without explanation indicate that it also was part of this plan for IMPAC to avoid its creditors.

22. Mr. Bailey did present us with depositions of Richard Strada and James B. Irwin from the Irby Construction case.

23. A review of these depositions confirm the continuing duplicity of these gentlemen—both individuals continually being unable to explain, or expressing ignorance of, large transfers of funds out of Integrated Connecticut, and other machinations of IMPAC.

24. I have attached a number of excerpts from Mr. Strada's deposition in the Irby Construction case showing the futility of any deposition of Mr. Strada due to his inability to recall the substance of transactions transferring funds out of Integrated Connecticut. These excerpts are attached to this Affidavit as Exhibit Y.

25. I have also attached excerpts from the deposition of James B. Irwin in the Irby Construction case, which demonstrates both his inability to explain the transfers of money from Integrated Connecticut, and his supposed lack of knowledge of the "goings on" in his own business. In his deposition, Mr. Irwin professes ignorance about the most fundamental information with respect to companies he owns, often using the excuse that "he was not on the board" of that corporation, even though he owns a controlling interest in these companies. These excerpts are attached to this Affidavit as Exhibit Z. At one point, he even makes the statement that Integrated Florida does not operate as IMPAC

(p. 18, ll. 22-25; p. 19, ll. 1-3). For the Court's convenience, I have attached the first page of IMPAC's website (Exhibit AA) which notes the copyright of the website being in Integrated Florida.

26.   Mr. Bailey has thus clearly been engaged to simply increase the difficulty to Ellcon of collecting its judgment. His actions have done nothing to address the issues already ruled on by this Court in its Order for Sanctions. IMPAC's complete defiance continues, unabated.

FURTHER AFFIANT SAYETH NOT.

_____
Kymric Y. Mahnke

SWORN to and subscribed before me
this 2nd day of October, 2003.

_____(L.S.)
Notary Public for South Carolina
My Commission Expires: 8-9-04

8