2003 OCT 10 P 5: 13

DISTRICT C...
NEW HAVEN, C...

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Integrated Control Systems, Inc., Robert A. Jacobson, | ) ) ) | Civil Action No. 300 CV 1295 (PCD) |
| Plaintiffs, | ) ) | **MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND SUPPLEMENT** |
| vs. | ) ) ) | |
| Ellcon-National, Inc., | ) ) | |
| Defendant. | ) ) | October 10, 2003 |

## I. PROCEDURAL HISTORY

On July 30, 2002, the Defendant, Ellcon-National, Inc. ("Ellcon") served a set of interrogatories and requests for production on the Plaintiff, Integrated Control Systems, Inc. ("ICS Connecticut" or "ICS"). As a result of ICS Connecticut's continued refusal to make a full response to this post-judgment discovery, Ellcon served and filed a Motion to Compel this discovery (Court Doc. #49). This motion was subsequently granted by the Court on December 24, 2002. To this day, the ruling which granted this Motion to Compel remains in full force and effect, modified only to the extent it was altered by the Court's subsequent Ruling dated January 21, 2003 (Court Doc. #59) (hereinafter, the "January 21 Ruling"). As part of that January 21 Ruling, the Court set forth the four categories of items that "the Plaintiff" was required to produce. *See* id. at 2.

Ellcon, in order to enforce the January 21 Ruling and the Court's order granting the Motion to Compel, served a Motion for Sanctions on ICS Connecticut on or about March 13, 2003 (Court Doc. #66). That Motion for Sanctions, plus Ellcon's Memorandum in support thereof (Court Doc. # 67), ICS Connecticut's Objection thereto (Court Doc. #68), and Ellcon's Reply brief, were filed with the Court on May 6, 2003. Ellcon's Supplement to the Motion for Sanctions (Court Doc. #69) and ICS Connecticut's Motion to Strike the Supplement (Court Doc. #71) were received by the Court on July 27 and August 1, 2003, respectively. In a Court order dated August 18, 2003 (Court Doc. #72), the Court noted that the January 21 Ruling "is clear" and that it "is in no way tied to the deposition of Mr. Strada." Id. at 2. Therefore, the Court granted the Motion for Sanctions and ordered Ellcon to submit a motion for attorney's fees by September 29, 2003. This deadline was subsequently extended to October 10, 2003 (*See* Court Docs. #81 and 82).

ICS Connecticut has since filed a Motion for Reconsideration (Court Doc. #76) dated September 2, 2003 along with a memorandum of law and affidavit (Court Docs. #77 and 78). In support thereof, ICS defends on the ground that it "acted in good faith." ICS then filed its Supplement to Plaintiff's Motion for Reconsideration along with an affidavit from F. Lee Bailey (Court Doc. # 80), again claiming that it has "undertaken good faith efforts to comply with the court's order." Ellcon now submits this Opposition to ICS Connecticut's Motion for Reconsideration and the Supplement thereto.

2

## II. ICS CONNECTICUT'S SUPPLEMENT TO MOTION FOR RECONSIDERATION SHOULD BE STRUCK

Pursuant to Local Rule 7(c)—formerly 9(e)—"[m]otions for reconsideration shall be filed and served within ten (10) days of the filing of the decision or order from which relief is sought...." L.R. Civ. Pro. 7(c)1. In this case, the order at issue was filed on August 18, 2003. According to Fed. R. Civ. Pro. 6(a), the deadline for such a filing was September 2, 2003. The Motion for Reconsideration was filed on this deadline, and as such, is timely. However, the Supplement was filed on September 12, well past the deadline. Federal Rule 6(b) permits a party to file a motion for enlargement. No such motion was filed by ICS Connecticut. Therefore, Ellcon requests the Court to rule that the Supplement should not be considered as it is untimely, and that it should be stricken.[1]

## II. ICS CONNECTICUT'S MOTION FOR RECONSIDERATION MUST BE DENIED AS A MATTER OF LAW

### A. Legal Standard

"The Second Circuit Court of Appeals has held that motions for reconsideration under this Local Rule [9(e)] are, as a practical matter, the same thing as motions for amendment of judgment under Federal Rule of Civil Procedure 59(e)—each seeks to reopen a district court's decision on the theory that the court made mistaken findings in the first instance." Gold v.

---

[1] Ellcon had previously filed a Supplement to its Motion for Sanctions. In turn, ICS made the argument that this Supplement was not filed in accordance with the standing order in this case relating to the service and filing of pleadings, and moved for an order that it should therefore be stricken.

3

Dalkon Shield Claimants Trust, 1998 U.S. Dist. LEXIS 22412, *4-5 (Burns, U.S.D.J.). "As such...we believe that a motion under local rule 9(e) must be treated the same as a motion under Rule 59." City of Hartford v. Chase, 942 F.2d 130, 133 (2d Cir. 1991). "A motion for reconsideration made pursuant to Rule 59(e) must adhere to stringent standards. Rule 59(e) recognizes only three possible grounds for any motion for reconsideration: (1) an intervening change in the law; (2) the availability of new evidence not previously available; and (3) the need to correct a clear error of law or prevent manifest injustice." Gold v. Dalkon Shield Claimants Trust, *supra*, at *5.

"Our standard for granting a motion for reconsideration is strict." Hock v. Thipedeau, 2003 U.S. Dist. LEXIS 7180, *2 (Goettel, U.S.D.J.). "A plaintiff filing such a motion faces a heavy burden in pursuing such a motion." Gold v. Dalkon Shield Claimants Trust, *supra*, at *5. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Stanger v. Her-Fic, S.A., 2002 U.S. Dist. LEXIS 14047, *3 (Hall, U.S.D.J.), *citing* Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

"A motion for reconsideration is not simply a second opportunity for the movant to advance arguments already rejected," Conn. State Dep't of Soc. Servs. v. Thompson, 242 F. Supp. 2d 127 (Underhill, U.S.D.J.), "nor may such a motion 'be used to plug gaps in an

4

original argument or to argue in the alternative once a decision has been made.'" Bristol Tech., Inc. v. Microsoft Corp., 127 F. Supp. 2d 61, 62 (D. Conn. 2000) (Hall, U.S.D.J.), *quoting* Philbrick v. Univ. of Conn., 51 F. Supp. 2d 164, 165 (D. Conn. 1999) (Nevas, U.S.D.J.); Szollosy v. Hyatt Corp., 2002 U.S. Dist. LEXIS 19594, *2 (Droney, U.S.D.J.). Moreover, "[a] motion for reconsideration should not serve as a vehicle for relitigating issues already decided." Metropolitan Entertainment Co. v. Koplik, 25 F. Supp. 2d 367, 368 (D. Conn. 1998) (Goettel, U.S.D.J.). "Whatever may be the purpose of [a Motion for Reconsideration], it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." Gold v. Dalkon Shield Claimants Trust, 1998 U.S. Dist. LEXIS 22412, *11-12 (Burns, U.S.D.J.). As set forth more fully below, based upon the legal standard previously set forth, ICS Connecticut has failed to meet the minimum threshold requirements needed to advance its Motion for Reconsideration.

B. Analysis

*1. There has been no intervening change in the law.*

It goes without saying that there has been no intervening change in the law. In particular, there has been no such change in the law relating to the imposition of sanctions pursuant to Fed. R. Civ. Pro. 37, nor to any of the law that ICS Connecticut cites—sparse as they may be—in its Opposition to the Motion for Sanctions. In the Opposition to the Motion for Sanctions, ICS cites to two cases. The first, Evans v. Connecticut, 967 F.Supp. 673

5

(D.Conn. 1997), was cited for the proposition that an affidavit was required. The second, <u>Daval Steel Products v. M/V Fakredine</u>, 951 F.2d 1357 (2d Cir. 1991), was cited for purposes of setting forth the standard by which the court has discretion to award sanctions. As there has been no change in the law between August 21, 2003 and the present as it relates to any of these issues, this first prong cannot serve as a basis for reconsideration of the Court's order.

*2. The Motion for Reconsideration does not present new evidence not previously available.*

Another basis upon which reconsideration is proper is if the movant brings new evidence before the court that was not previously available. In this case, the factual predicate set forth in the Affidavit submitted with ICS Connecticut's Motion for Reconsideration presents little to no new evidence to the Court. To the extent that there is any new evidence therein, none of it was previously unavailable. In ICS Connecticut's Objection to the Motion for Sanctions, ICS claimed that "the defendants have utterly failed to make any effort to work with ICS and its counsel regarding its asserted discovery dispute." Ellcon, of course, denies this assertion. Nonetheless, the Motion for Reconsideration and the affidavit attached thereto are nothing more than an articulation of this original argument made in the Opposition to the Motion for Sanctions which was filed on May 6. The vast majority of the facts in Mr. Slater's affidavit concern the time period *before* the Motion for Sanctions and Opposition were filed with the Court. As such, the facts in Mr. Slater's Affidavit cannot be considered either "new"

6

nor "previously unavailable." Instead, ICS is merely trying to " plug gaps in [its] original argument." Bristol Tech., Inc. v. Microsoft Corp., 127 F. Supp. 2d 61, 62 (D. Conn. 2000).

*3. There is no clear error of law, nor a need to prevent manifest injustice.*

There is also no clear error of law. In the Motion for Reconsideration, ICS claims that Fed. R. Civ. Pro 34 requires that "production of documents responsive to discovery orders only requires the production of *existing* documents in the responding party's possession." Motion for Reconsideration, at 5 (emphasis in original). However, Rule 37 allows the court to make such orders "as are just." Fed. R. Civ. Pro 37(d).[2] Likewise, the Connecticut Rules of Court permit the court to "make such order as the ends of justice require."[3] P.B. § 13-14. *See also*, Bank of New York v. Meridien Biao Bank Tanz., 171 F.R.D. 135, 142 (1997), *infra*. Therefore, because these sections permit the Court to make whatever ruling it deems just and necessary to allow Ellcon to obtain full and fair responses to its discovery requests, the Court has not committed an error of law by issuing its January 21 Ruling. Further, as set forth in § III of this Objection, the existence of good faith does not prevent the Court from issuing sanctions against a party for violations of discovery orders.

---

[2] ICS has repeatedly claimed that the January 21 "Ruling arose outside the context of any interrogatories." Motion for Reconsideration at 5 n.1. Nothing can be further from the truth. Interrogatories and Requests for Production were served on ICS on July 30, 2002, and its failure to comply led to the granting of a Motion to Compel (Court Doc. #49). This Motion to Compel, and the underlying discovery requests served as a basis of the Court's January 21 Ruling. Therefore, Practice Rules relating to interrogatories and production requests are germane.

[3] Note that the state court rules are applicable pursuant to Fed. R. Civ. Pro 69(a), which "permits the judgment creditor to obtain discovery 'in the manner provided in these rules *or in the manner provided by the practice of the state in which the district court is held.*'" Magnaleasing, Inc. v. Staten Island Mall, 76 F.R.D. 559 (1977).

7

The court's ruling does not create manifest injustice. The only party subject to manifest injustice in this proceeding is Ellcon, which has encountered—to use the words of the court—"stonewalling in the face of legitimate discovery requests." Ruling of August 18, 2003, at 4. "A party who flouts such orders does so at his peril." Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 73 (2d Cir. 1988). "The mildest sanction is the reimbursement of expenses to the opposing party caused by the offending party's failure to cooperate." Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 179 F.R.D. 77, 80 (D.Conn. 1998). Here, ICS has engaged in perilous activity, and the imposition of the "mildest sanction" is not manifestly unjust.

*4. ICS Connecticut's Motion for Reconsideration is simply an attempt to "relitigate issues already decided," "or to argue in the alternative once a decision has been made."*

"A motion for reconsideration should not serve as a vehicle for relitigating issues already decided," Metropolitan Entertainment Co. v. Koplik, 25 F. Supp. 2d 367, 368 (D. Conn. 1998), "nor may such a motion be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." Bristol Tech., Inc. v. Microsoft Corp., 127 F. Supp. 2d 61, 62 (D. Conn. 2000) (internal citations omitted). Here, ICS Connecticut is attempting to do what these cases prohibit. ICS originally objected to the Motion for Sanctions on the basis that the Ruling was related solely to the Strada deposition, that Ellcon violated Federal Rule 37(a)(2), and that ICS ultimately cured its sanctionable conduct.

8

Following the Court's imposition of sanctions, ICS has now decided to pursue its alternate "good faith" defense, which is based in large part on actions taken *before* the Motion for Sanctions was filed. ICS could have fully set forth this defense in its Opposition to the Motion for Sanctions, and certainly could have done so well before the Court ultimately considered the motion. ICS instead chose not to. Now that ICS has lost, it is trying to litigate the issue it previously did not pursue. As has been noted, "[a] plaintiff filing such a motion [for reconsideration] faces a heavy burden in pursuing such a motion." Gold v. Dalkon Shield Claimants Trust, 1998 U.S. Dist. LEXIS 22412, *5. ICS Connecticut has not met this burden, and as such, the Motion for Reconsideration should be denied.

### III. THE MOTION FOR RECONSIDERATION MUST BE DENIED BECAUSE "GOOD FAITH" IS NOT A DEFENSE TO THE SANCTIONS IMPOSED

A. Legal Standard

"Pursuant to Rule 37, 'if a party...fails to obey an order to provide or permit discovery ...the court in which the action is pending may make such orders in regard to the failure as are just." Bank of New York v. Meridien Biao Bank Tanz., 171 F.R.D. 135, 142 (1997), *quoting* Fed. R. Civ. P. 37(b)(2). "The Second Circuit has stated: 'we wish to emphasize the importance we place on a party's compliance with discovery orders.... A party who flouts such orders does so at his peril.'" Baker v. ACE Advertisers' Serv., 153 F.R.D. 38, 40 (S.D.N.Y. 1992), *quoting* Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 73 (2d Cir. 1988). *See also*, Factor v. Mall Airways, 131 F.R.D. 52, 55 (1990). Moreover, "[t]he Second

9

Circuit has held that 'provided there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that particular order.'" Evans v. Connecticut, 967 F.Supp 673, 689 (D.Conn. 1997), *quoting* Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357 (2d Cir. 1991).

"By its terms, Rule, 37 places the burden on the disobedient party to avoid (assessment of) expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust. To make an award of costs and fees, therefore, the court need not consider the precise reasons for defendant's failures of compliance; it must only determine whether those failures were 'substantially justified,' within the meaning of Rule 37." J. M. Cleminshaw Co. v. Norwich, 93 F.R.D. 338, 349 (1981) (internal citations and quotations omitted). "[O]ur Court of Appeals has stated that 'where justified…the imposition of sanctions for discovery abuse is essential to the sound administration of justice. The now-settled view [is] that litigants, the public, and the courts share an interest in the prompt and efficient administration of justice; that failures of counsel to comply with applicable discovery rules and court orders threaten that common interest; and that reasonable sanctions, carefully and consistently applied, are an appropriate means of deterring further violations and vindicating the public interest." Id. at 360.

"Rule 37 provides a non-exclusive list of sanctions that may be imposed on a party for failing to obey an order to provide or permit discovery. The mildest sanction is the

10

reimbursement of expenses to the opposing party caused by the offending party's failure to cooperate, while the harshest sanction is the order of dismissal and default judgment." Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 179 F.R.D. 77, 80 (D.Conn. 1998). "While severe sanctions, such as dismissal of the action, can generally only be imposed upon a showing of wilfulness or bad faith on the part of the party refusing discovery, monetary damages may be awarded for discovery abuses or failures, even absent bad faith." Factor v. Mall Airways, 131 F.R.D. 52, 55 (S.D.N.Y. 1990). *See also* Martinelli, *supra*, 179 F.R.D. at 80 ("a finding of willfulness or contumacious conduct is not necessary to support sanctions which are less severe than dismissal or entry of a default judgment").

B. Analysis

ICS Connecticut claims in its Motion for Reconsideration that sanctions "should be applied only when a party acts in bad faith in violation of the Court's orders." Id. at 8. This is a clear and unambiguous misstatement of the law on the part of ICS. The law in the preceding section of this memorandum makes this clear. Further, ICS Connecticut's very own cases show that ICS is making a material misrepresentation of the law.[4] In those cases it is noted that "good faith alone is not sufficient to excuse contempt," Food Lion v. United

---

[4] Such misrepresentations are entirely consistent with ICS Connecticut's track record of torturing this Court's rulings and the procedural history in this case. Indeed, despite the Court's unambiguous statement in the August 18 Ruling that the "January 23 order…is in no way tied to the deposition of Mr. Strada," id. at 2, ICS is *still* arguing that "[t]he ruling at issue arose in conjunction with a subpoena *duces tecum* served regarding deposition of Richard Strada." Memorandum in Support of Motion for Reconsideration, at 5.

11

Food & Commer. Workers Int'l Union, 103 F.3d 1007, 1017-18 (D.C. Cir. 1997), and that "[t]he violation need not be intentional or willful." NAACP v. Brock, 619 F. Supp. 846, 850 (D.D.C. 1985).  Further, Hochberg v. Howlett, 1994 U.S. Dist. LEXIS 5617 (S.D.N.Y.), merely stands for the well recognized principle that a default judgment or the *"dismissal of an action*...is appropriate only where the noncompliance is due to willfulness, bad faith." Id. at *7 (emphasis added).  Nothing in Hochberg can be construed to limit a sanction of attorney's fees to situations where there has been bad faith.

As such, Ellcon urges this Court to adopt the well-recognized rule that good faith is not a defense to a sanction of attorney's fees.  Therefore, the entire basis upon which ICS Connecticut rests its motion for reconsideration—namely that sanctions for attorney's fees cannot be imposed absent bad faith—must fail.  This is assuming, *arguendo,* that the Court even believes that there was such good faith. As set forth in Section V if this Opposition, *infra,* it is clear that there has been willfulness and bad faith on the part of ICS Connecticut.

### V. EVEN IF THE MOTION FOR RECONSIDERATION IS GRANTED, SANCTIONS SHOULD STILL BE IMPOSED BASED UPON ICS CONNECTICUT'S CONDUCT.

Regardless of whether or not the Court grants the Motion for Reconsideration, and regardless of whether the Court considers ICS Connecticut's Supplement, the August 18, 2003 order should not be vacated or altered because ICS remains embroiled in a bad faith charade to prevent the truth about the IMPAC Empire from coming to light.  In its

Supplement, ICS makes the bold statement that "movant has made every effort to provide information to Ellcon National, Inc. ("Ellcon"), full and complete information about Integrated (Connecticut)'s financial affairs since 1998." As set forth in the affidavit of Kymric Mahnke, which has been filed simultaneously herewith, this statement cannot possibly be true.

On May 5, 2003, ICS stated in response to Requests for Admissions that ICS had produced all relevant information and records in its possession, and that any other items had been either lost or destroyed. Mahnke Aff'd, ¶ 6. However, in response to pressure applied by counsel for Ellcon, ICS was subsequently able to arrange for the compilation of an electronic database, purportedly including all checks that were used to transfer huge amounts of cash out of ICS Connecticut and purportedly explaining said transfers. Id. ¶ 7-9. On the one hand, this "database" omits checks previously provided to Ellcon, thereby calling into question any conclusions based upon it. Id. ¶ 10. On the other hand, this "database" does include checks that had never been previously produced to Ellcon, thereby calling into question the veracity of ICS's May 5 responses to the Request for Admission. Id. ¶ 11. Further, this database does nothing to provide details of the transfers, nor does it explain the nearly $1 Million in payments from ICS Connecticut to Integrated Florida made under the guise of "Worldwide Corporate Services." Id. ¶ 8-13. As such, this database does nothing to cure the sanctionable conduct that ICS continues to perpetrate, but rather exacerbates it.

13

There is other evidence to show ICS Connecticut's bad faith in this matter. Integrated Florida owns or leases an airplane hangar located at 28000 Airport Road in Punta Gorda, Florida. Id. ¶ 14. However, it is clear that ICS Connecticut—not Integrated Florida—that was providing for the upkeep of this hangar. Checks show that ICS Connecticut was paying for pest control bills, landscaping bills, utility bills, roof repair bills, bills for new carpet, security services bills, and other items, including signs, parking lot maintenance, new counter tops, and garbage removal. Id. ¶ 14. There is nothing to suggest that ICS Connecticut was ever connected with the activities at this hangar, yet it was apparently paying all of the bills for its upkeep.

There were other payments that ICS Connecticut made on behalf of Integrated Florida. These include printing costs, traditional and cellular phone bills, coffee and beverage services, local employment agency bills, advertising costs in Florida newspapers, photocopier lease payments, janitorial costs, and bills for stamps bought from the Punta Gorda Post office. Id. ¶ 15. Not surprisingly, none of these checks were included in the so-called "database" that was proffered to explain and detail the transfers, and no other details or explanations have been made. Id. ¶ 14-15. Also not included in the "database" and for which no other details or explanations have been given are $816,000 worth of checks made payable to IMPAC Integrated Systems Inc., a company located in Newport Beach, California. Id. ¶ 17.

14

The "database" does contain $1,875,000 worth of checks previously provided to Ellcon. These particular checks were made payable to Integrated Florida with the sole explanation being that they were for payment of "royalties." Id. ¶ 18. As detailed in Ellcon's Memorandum in Support of Its Motion for Sanctions and in the Mahnke Affidavit, these so-called royalty payments were a complete sham, and were nothing more than a liquidation of ICS Connecticut's assets. Id. ¶ 18. However, in another apparent contradiction of ICS Connecticut's responses to the Requests for Admissions, the "database" also contains an additional $900,000 of these sham royalty payments that had never been previously given to Ellcon. Id. ¶ 19.

From the foregoing, a number of things are clear. First of all, it is readily apparent that ICS Connecticut and Integrated Florida never operated at arms length and that the huge amounts of unexplained cash transfers—both to Integrated Florida and to the California IMPAC entity—indicate that ICS Connecticut had a master plan to avoid its creditors. Also, it is clear that the depositions upon which ICS repeatedly states are the proper vehicles to get the explanations and details sought would be futile. Excerpts of prior depositions of both Richard Strada and James B. Irwin show that these gentlemen are either unable to explain or are in complete ignorance of these transfers. Id. ¶ 23-25. Most importantly, the record shows that ICS Connecticut has not acted in good faith with regard to the Court's orders. ICS has repeatedly tortured the plain meaning of words beyond belief, despite Court rulings noting

15

that plain meaning ought to be applied. ICS has continued to flout the Court's orders to provide explanations and details for the transfers. Then, once a "database" is provided to purportedly give those explanations and details, and once ICS makes representations that the database fulfils the Court order, it turns out that the database utterly fails to comply. In sum, the complete defiance of the IMPAC Empire—including ICS Connecticut—continues, unabated.

## VI. CONCLUSION

Based upon the foregoing, the Defendant, Ellcon-National, Inc., respectfully requests that this Court deny Plaintiff's Motion for Reconsideration, and that this Court sustain the August 18, 2003 order imposing sanctions upon the Plaintiff.

THE DEFENDANT,
ELLCON-NATIONAL, INC.

By _____
Charles I. Miller
O'Connell, Flaherty & Attmore, LLC
280 Trumbull Street
Hartford, CT  06103
Federal Bar No . CT 08203
Phone # (860)548-1300
Fax # (860)548-0023
Email: cmiller@ofalaw.com

16

and

Kymric Y. Mahnke, Esq.
Nelson, Mullins, Riley & Scarborough, LLP
Poinsett Plaza
104 South Main Street, Suite 900
P.O. Box 10084
Greenville, SC  29601

I hereby certify that the original of the foregoing has been hand-delivered this 10th day of October, 2003 to:

Counsel Served:

Kenneth R. Slater, Jr., Esq.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103

_____
Charles I. Miller, Esq.